**RIGCO, INC., Plaintiff,**

v.

**RAUSCHER PIERCE REFSNES, INC., Defendant.**

**Civ. A. No. CA 3–82–1813–D.**

United States District Court, N.D. Texas, Dallas Division.

May 8, 1986.

Robert F. Watson, Robert W. Blair, Law, Snakard & Gambill, Fort Worth, Tex., for plaintiff and would-be intervenors.

Fletcher L. Yarborough, Bruce W. Collins, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendant.

## MEMORANDUM DECISION AND ORDER

FITZWATER, District Judge.

On motion to intervene, the court is called upon to decide whether sole shareholders in a bankrupt corporation, who are partial guarantors of the bankrupt's $2.75 million bank debt, and whose liability as guarantors could be ameliorated by the success of the bankrupt's lawsuit against a third party, have a sufficient interest to intervene in the lawsuit as a matter of right. Because the court concludes that shareholders have failed to demonstrate a sufficient interest, it denies the motion.

### I.

Nolan H. Brunson, Jr., Kenneth R. Marsh, and John B. Castle ("Shareholders") are the sole shareholders of plaintiff, Rigco, Inc. ("Rigco"), as well as its sole officers and directors. They seek to intervene in this action[1] in which Rigco has sued defendant, Rauscher Pierce Refsnes, Inc. ("RPR"), for breach of contract, negligence, and breach of fiduciary duty, alleg-

1. The action was originally filed in the U.S. District Court for the District of New Mexico. It was transferred to this Court pursuant to 28 U.S.C. Sec. 1404(a) (1976).

ing that RPR had agreed, but failed, to use its best efforts to fulfill an exclusive dealer-manager agreement. Pursuant to the agreement, RPR was to raise $10.5 million for a limited partnership in which Rigco was to be general partner. According to Rigco's complaint, Rigco intended to form Rigco Ltd.-I, a limited partnership, which would acquire drilling rigs. Rigco engaged RPR to act as dealer-manager of an offering of limited partnership units. The offering was conducted on an all-or-nothing basis. If all offered units were not sold, the sale would not close and any money invested would be returned. Rigco alleges that RPR neglected and failed to use its best efforts to sell the units because it failed to promote the offering properly through its branch offices and failed to solicit and form a group, including other broker-dealers, to sell the units through agreements with selected dealers.

Shortly after this litigation was commenced, Rigco filed a voluntary petition[2] in bankruptcy pursuant to Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. Sec. 101 et seq. (1986), and, according to Shareholders, Rigco is still going through Chapter 11 reorganization/liquidation in the U.S. Bankruptcy Court. Rigco contends that RPR's failure to raise the limited partnership capital caused Rigco to file for bankruptcy and to default on the $2.75 million bank loan. Shareholders now desire to intervene in the Rigco-RPR action as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2).[3]

## II.

To determine whether Shareholders may intervene, the court must decide whether they meet each element of the four-part test stated by the Fifth Circuit in *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir.1978): (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

Because failure to meet any one ineluctable element is fatal to intervention as of right, *id.*, the court need only hold, as it does here, that Shareholders have failed to demonstrate compliance with the second element in order to deny the motion. *See, e.g., New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir.1984) (en banc), *cert. denied sub nom., Morial v. United Gas Pipe Line Co.*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) (affirming district court's refusal to permit intervention where potential intervenor failed to demonstrate interest relating to the transaction which formed the subject matter of the action).

There is no clear-cut test to determine the nature of the interest required for intervention of right. The inquiry is a flexible one which focuses on the particular facts and circumstances surrounding each application measured by a practical rather than technical yardstick. *United States v. Perry County Board of Education*, 567 F.2d 277, 279 (5th Cir.1978). Intervenors contend the particular facts[4] of the instant

---

**2.** The Chapter 11 petition was filed in the U.S. Bankruptcy Court for the District of New Mexico and is now pending in that court.

**3.** Fed.R.Civ.P. 24(a)(2):

Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action

may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**4.** Because all well-pleaded material factual allegations contained in the intervenors' complaint must be accepted as true, *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C.Cir.1981), the court accepts as true the facts proffered by intervenors in support of their motion.

case warrant intervention. Rigco, now a Chapter 11 debtor-in-possession, is indebted to the Federal Deposit Insurance Corporation ("FDIC"), successor to the failed First National Bank of Midland ("FNM"), in the amount of $2.75 million. Rigco alleges that it would not have defaulted on this obligation had RPR performed the offering contract. Shareholders guaranteed 25% of the FNM debt obligation. A judgment was entered by the U.S. District Court for the Western District of Texas in favor of the FDIC against Shareholders, jointly and severally, in the amount of $687,500 plus $37,000 attorney's fees. Both Rigco and Shareholders seek to hold RPR liable for their indebtedness to the FDIC on the theory that, had RPR not breached its best efforts underwriting contract and/or not negligently performed the contract, the Rigco Ltd.–1 offering would have been successfully sold by RPR and, in consequence, the FNM loan to Rigco would have been repaid in full from the proceeds of the offering. (Mot. Intervene at 3).

■ Shareholders urge in support of their motion that they are so situated that the disposition of the Rigco-RPR action, absent their intervention, will impede or impair their ability to protect their interests and that their interests are not adequately represented by Rigco. (Mot. Intervene at 3). Rigco is an inadequate surrogate, they contend, because Rigco's recovery against RPR, if any, would be an asset of the Rigco bankruptcy estate to be divided among the unsecured creditors of Rigco. The two principal claimants in the Rigco bankruptcy are the FDIC, with its undisputed claim of $2.75 million, and The Bouvaird Supply Company, with a claim that has been settled, subject to court approval, in the amount of $1.1 million. If the FDIC claim is not paid from the estate, the FDIC will look to the Shareholders for any deficiency and may also proceed directly against the Shareholders to collect the judgment obtained on their guaranties. Shareholders predict that a deficiency will remain after the Rigco bankruptcy is resolved. For that reason, they contend they have an interest in assuring the largest possible settlement or award in Rigco's suit against RPR. In other words, according to Shareholders, the larger the ultimate settlement or award in this lawsuit, the more money there will be available to pay the FDIC and the FDIC either will not pursue its judgment against Shareholders or will do so for less than the full amount of the judgment.

As is clear from Shareholders' motion and supporting brief, as well as from the proposed first amended complaint attached to their motion, Shareholders' claimed injury is derivative of Rigco's claimed injury and Shareholders' interest in the Rigco-RPR lawsuit does not exceed the normal interest that a shareholder has in a lawsuit brought by a corporation in which he owns stock. This contingent sort of interest does not meet the Fifth Circuit test for direct, substantial, legally protectable interest in proceedings which will permit intervention as of right under Rule 24(a)(2).

The term "interest" is narrowly read to mean a direct and substantial interest in the proceedings. *New Orleans Public Service,* 732 F.2d at 463, *citing Perry County Board of Education,* 567 F.2d at 279. The interest has to be "a significantly protectable interest," *New Orleans Public Service,* 732 F.2d at 464, *quoting Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971), one that the substantive law recognizes as belonging to or being owned by the party seeking intervention. *Id.*

■ Shareholders, however, have not demonstrated a separate interest which they could affirmatively and independently assert as a cause of action, or that the substantive law recognizes as their own claim against RPR. Under federal common law, Texas law, and New Mexico law, only a corporation and not its shareholders, not even sole shareholders, can complain of an injury sustained by, or a wrong done to, the corporation. *United States v. Palmer,* 578 F.2d 144, 145–46 (5th Cir.1978) (applying federal common law); *McDonald v. Bennett,* 674 F.2d 1080, 1085 (5th Cir.1982)

(applying Texas law); *Bank of New Mexico v. Rice,* 78 N.M. 170, 429 P.2d 368, 374 (1967), *on appeal after remand,* 79 N.M. 115, 440 P.2d 790 (1968) (applying New Mexico law). Instead, Shareholders' interest is purely economic and a purely economic interest is insufficient to justify intervention under Rule 24(a)(2). *New Orleans Public Service,* 732 F.2d at 466.

■ If this court were to recognize Shareholders' asserted "interest" as one that gives rise to intervention as of right under Rule 24(a)(2), it would be tantamount to extending the right to any person with a potential claim if the outcome of a lawsuit might increase or decrease the collectibility of his claim. *See Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 564 F.2d 1343, 1346 (9th Cir.1977). The possibility of a benefit because a party may have more money available at the conclusion of a lawsuit does not constitute a direct, substantial, legally protectable interest under Rule 24(a)(2). *New Orleans Public Service,* 732 F.2d at 470. *See generally, Heyman v. Exchange National Bank of Chicago,* 615 F.2d 1190, 1194 (7th Cir.1980). ("we have some hesitancy in the present case in recognizing what may be a remote possibility of benefit to Geist out of the present action as a sufficiently direct and substantial interest under Rule 24(a)"). *See by analogy, Jet Traders Investment Corp. v. Tekair, Ltd.,* 89 F.R.D. 560, 570 (D.Del. 1981) ("the mere fact that the first action may decrease the ability of the intervenor to collect a potential judgment against the defendant is insufficient to be considered a substantial impairment of an interest for the purposes of Rule 24(a)(2)"). *Cf. Securities and Exchange Commission v. Flight Transportation Corp.,* 699 F.2d 943, 948 (8th Cir.1983).

■ Additionally, even if the court were to recognize generally that an "interest" in the overall amount of funds available in the bankruptcy estate is a legally

protectable and direct interest, it would not necessarily benefit the Shareholders. Under Texas law,[5] the FDIC, as creditor, is free to proceed against only the Shareholders and not to seek any of the indebtedness from Rigco. A note and a guaranty of payment are separate undertakings in the sense that the guarantor may be sued apart from the maker because a guarantor of payment is primarily liable; he waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty. *Hopkins v. First National Bank at Brownsville,* 551 S.W.2d 343, 345 (Tex. 1977). The ultimate size of the overall bankruptcy estate, whether large or small, does not preclude the FDIC from choosing to pursue its remedies exclusively against the Shareholders rather than Rigco.

The motion to intervene is DENIED.

---

5. The FDIC succeeded to the interests of FNM. The Shareholders' guaranties of Rigco's debt to FNM are governed by Texas law. The FDIC's succession to the rights of FNM does not alter this. *Federal Deposit Insurance Corp. v. Sumner Financial Corp.,* 602 F.2d 670, 681 (5th Cir. 1979).