In the Matter of SUMMIT RIDGE
APARTMENTS, LTD., Debtor.

SUMMIT RIDGE APARTMENTS, LTD.,
an Alabama Limited Partnership,
Plaintiff,

Honorato M. Aguila, et al., Limited Part-
ners of Summit Ridge Apartments, Ltd.,
an Alabama Limited Partnership, In-
tervenors,

v.

SUMMIT RIDGE ASSOCIATES, a Geor-
gia Limited Partnership; Hobar
Group, Inc., Defendants.

Bankruptcy No. 87–10730.
Adv. No. 88–0078.

United States Bankruptcy Court,
N.D. Alabama, S.D.

July 7, 1989.

Thomas E. Reynolds, Birmingham, Ala., for Summit Ridge, Ltd.

Leon M. Capouano, Montgomery, Ala., for Summit Ridge Associates & Hobar Group.

Charles L. Denaburg, Marvin E. Franklin, Birmingham, Ala., for Summit Ridge Apartments, Ltd.

John C. Coggin, III, and Frank Buck, Birmingham, Ala., for Limited Partner Investors of Debtor.

## MEMORANDUM OPINION

CLIFFORD FULFORD, Bankruptcy Judge.

Presently before the court is the defendants' motion to dismiss a complaint filed by certain limited partners of the debtor/plaintiff who were allowed to intervene of right as party plaintiffs in this adversary proceeding. The defendants' motion to dismiss was coupled with an alternative motion to transfer this proceeding to district court due to the intervenors' assertion of non-bankruptcy federal and state claims and concomitant demand for a jury trial. At the hearing on the defendants' alternative motions, this court construed the defendants' motion to transfer as a motion to withdraw the reference and pretermitted ruling upon the motion to dismiss until the district court ruled upon the jurisdictional issue.

The district court held that a ruling by this court on the motion to dismiss might moot the alternative motion to transfer and accordingly denied the motion to transfer without prejudice to the defendants' refiling said motion after a ruling by this court on the motion to dismiss.

For the reasons stated herein, this court 1) GRANTS the defendants' motion to dismiss the intervenors' complaint without prejudice to the intervenors' assertion of their individual claims in a non-bankruptcy forum and 2) RATIFIES this court's prior order permitting the limited partners to intervene of right as party plaintiffs with respect to the three claims asserted by the debtor/plaintiff against the defendants.

## I. BACKGROUND

On or about November 30, 1983, plaintiff Summit Ridge Apartments, Ltd.,[1] an Alabama limited partnership, purchased a 146–unit apartment complex located in Austell, Georgia from the defendant Summit Ridge Associates ("SRA"), a Georgia limited partnership, and executed a note and wraparound mortgage on the complex in favor of SRA. Plaintiff purchased the complex from SRA subject to two previous mortgages: United Service Life Insurance Company and Home and City Bank held the first mortgage on Phases I and II of the complex, respectively, and Summit Ridge, Limited ("Felker"), which previously sold the complex to Hobar Group, Inc. ("Hobar"), held the second mortgage from Hobar on the entire complex. Hobar transfer-

---

1. Summit Ridge Apartments, Ltd. is comprised of the general partner, United Capital Invest- ments, Inc., and 26 limited partners.

red the complex to SRA prior to its sale to plaintiff.

On November 30, 1987 plaintiff commenced a chapter 11 bankruptcy proceeding (BKC 87–10730) in this court. On January 25, 1988 the defendants SRA and Hobar filed proofs of claim as secured creditors in plaintiff's bankruptcy case in the amounts of $3,180,200 and $2,391,256, respectively.

On February 8, 1989 plaintiff commenced an adversary proceeding in this court against said defendants (AP NO. 88–0078) and alleged that this proceeding was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), and (O).[2] In its complaint, plaintiff alleged that although it was not in default in its payments to defendants under the SRA mortgage, the defendants failed to pay or refinance the Felker mortgage, which default precipitated the appointment of a receiver, the initiation of foreclosure proceedings and the filing of this chapter 11 proceeding. By way of counterclaim to the defendants' proofs of claim, plaintiff sought to offset and disallow defendants' claims, to cancel the SRA mortgage and to recover judgment against defendants in the amount of $3,180,200 as damages for defendants' conduct.

On March 16, 1988, plaintiff amended its complaint to add two additional counts which were also alleged to be core. Count II of the amended complaint alleged that the defendants' default under the Felker mortgage also constituted a breach of the indemnification provision of the SRA mortgage which stated that SRA would indem-nify plaintiff for any damage sustained by reason of a default in the Felker mortgage. In Count III of the amended complaint, plaintiff requested that this court, pursuant to 11 U.S.C. § 510(c), equitably subordinate the defendants' claims to all other allowed claims and transfer the SRA mortgage to the estate.

■ In their answers to plaintiff's complaint, as amended, defendants admitted that all three counts asserted by plaintiff were core [3] but alleged as an affirmative defense that plaintiff's breach of the SRA mortgage by failing to maintain the complex precluded defendants from refinancing the Felker mortgage.

The plaintiff and defendants attempted to settle this adversary proceeding by executing a consent order which provided that, after notice to all interested parties and a hearing on objections to said compromise, the complex would be sold at public auction subject to the first and second mortgages, with the net proceeds following payment of the first and second mortgages to be distributed between plaintiff and defendants pursuant to a formula. Ten limited partners of plaintiff filed objections to the proposed compromise and requested that the proceeds from the sale be placed in escrow pending resolution of their objections. This court approved the sale of the complex [4] and ordered that, after payment of the first and second mortgages thereon, the net proceeds be held in escrow pending resolution of. the limited partners' objections. The ten limited partners then

---

**2.** 28 U.S.C. § 157(b)(2) provides in pertinent part that "[c]ore proceedings include, but are not limited to—

.  .  .  .  .

(B) allowance or disallowance of claims against the estate . . . ;
(C) counterclaims by the estate against persons filing claims against the estate;
. . . .
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship. . . .
28 U.S.C. § 157(b)(2)(B), (C), (O).

**3.** Although the defendants failed to request a jury trial of the debtor/plaintiff's complaint, as amended, because the debtor/plaintiff's claims against the defendants were in the nature of counterclaims to the defendants' proofs of claim, this court has jurisdiction to rule on the debtor/plaintiff's claims without according defendants a jury trial. *See Granfinanciera, S.A. v. Nordberg,* ___ U.S. ___, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (citing with approval *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) and *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)).

**4.** The debtor-in-possession's sale of the complex was due in part to a prior order of this court lifting the automatic stay effective October 7, 1988 to allow Felker to foreclose its mortgage if the debtor was unable to refinance the mortgage debt or sell the complex by said date.

amended their notice of objection to allege with particularity that the following acts of the plaintiff and defendants should preclude their receipt of any of the net proceeds from the sale:

1) plaintiff, by and through its promoters, fraudulently induced the limited partner investors to invest in the partnership;

2) plaintiff's failure to keep the complex in proper maintenance and repair constituted a breach of plaintiff's fiduciary duty to its limited partners; and

3) the defendants' deliberate failure to pay or refinance the Felker mortgage caused the limited partners to lose all of their investment in the partnership.

Twenty of plaintiff's limited partners[5] then filed a motion to intervene as additional named plaintiffs in said adversary proceeding under Bankruptcy Rule ("BR") 7024 and Fed.R.Civ.P. 24(a)(2) to assert the following causes of action against the defendants, as set forth in the intervenors' complaint:

1) defendants violated § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 thereunder by fraudulently inducing the intervenors to invest in the partnership;

2) defendants violated *Alabama Code* §§ 8–6–17 and –19 and other applicable blue sky laws by fraudulently inducing intervenors to invest in the partnership;

3) defendants violated *Alabama Code* §§ 6–5–101 to –104 by misrepresenting and/or concealing material facts to induce intervenors to invest in the partnership;

4) defendants breached the terms of the SRA mortgage by failing to pay or refinance the Felker mortgage when due and by failing to indemnify plaintiff from any damages sustained by virtue of said default;

5) defendants' conduct in inducing intervenors to invest in the partnership was willful and wanton entitling them to punitive damages; and

6) the above described activities of defendants constitute violations of RICO, 18 U.S.C. §§ 1961 *et seq.*, so as to entitle them to treble damages and attorney's fees.

The proposed intervenors' complaint, which demanded a jury for the trial of its claims, alleged that despite the assertion of its claims the adversary proceeding was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), and (O), and that this court had pendent jurisdiction of its state law claims.

After a hearing, this court entered an order granting the limited partners' motion to intervene as of right under Fed.R.Civ.P. 24(a)(2) to permit them to protect their interests in the disposition of the net proceeds of the sale.

The defendants then filed a motion to dismiss the intervenors' complaint on the ground that the intervenors' claims did not constitute a core proceeding, or an alternative motion to transfer the adversary proceeding to district court under 28 U.S.C. § 157(d) because resolution of the proceeding would require consideration of the bankruptcy code and other federal non-bankruptcy statutes.

This court construed the defendants' motion to transfer as a motion for withdrawal of the reference under BR 5011(a) and recommended that the district court grant the motion to transfer, withdraw the reference, and try and decide all of the undecided issues in this adversary proceeding.

The district court held, however, that a ruling by this court on the defendants' motion to dismiss might moot the defendants' alternative motion to transfer and accordingly denied the defendants' motion to transfer without prejudice to the defendants' refiling said motion after a ruling by this court on the motion to dismiss.

The resolution of the defendants' motion to dismiss the intervenors' complaint is dependent upon this court's reconsideration of its order allowing the limited partners to

---

**5.** The proposed intervenors included nine of the ten limited partners who originally filed objections to the proposed sale.

intervene of right as party plaintiffs in this adversary proceeding.

## II. INTERVENTION OF RIGHT OR BY PERMISSION

Bankruptcy Rule 7024 states that Rule 24 of the Federal Rules of Civil Procedure applies in adversary proceedings.

■ The limited partners must meet four requirements to intervene of right under Fed.R.Civ.P. 24(a)(2): [6]

1) the application must be timely;

2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

3) the applicant must be so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and

4) the applicant must demonstrate that his interest is represented inadequately by the existing parties to the suit.

*Athens Lumber Co. v. Federal Election Commission,* 690 F.2d 1364, 1366 (11th Cir.1982) (footnotes and related authorities omitted).

■ Failure to meet any one requirement is fatal to intervention of right. *See New Orleans Public Service v. United Gas Pipe Line Co.,* 732 F.2d 452 (5th Cir.1984) (*en banc*), *cert. denied sub nom., Morial v. United Gas Pipe Line Co.,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) (affirming district court's refusal to allow intervention where potential intervenor failed to demonstrate interest relating to transaction forming subject matter of action).

Under Fed.R.Civ.P. 24(b), upon timely application one may intervene in an action by permission when a federal statute confers a conditional right to intervene or when the applicant's claim or defense and the primary action have a question of law or fact in common. In determining whether to grant permissive intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R.Civ.P. 24(b).

■ For the reasons set forth below, this court holds that the limited partners are precluded from intervention of right or by permission to assert in this proceeding the claims enumerated in their intervenors' complaint but that the limited partners may intervene of right as party plaintiffs with respect to the three claims asserted by the debtor partnership against the defendants.

Counts I, II, III, V and VI of the intervenors' complaint charge the defendants with making fraudulent statements to induce the limited partners to invest in the debtor, in violation of federal and state securities laws, RICO, state fraud and misrepresentation statutes and common law. Count IV of the intervenors' complaint is virtually a mirror-image of Count II of the debtor's amended complaint and charges the defendants with breaching the indemnification provisions of the SRA mortgage.

The case of *Thomasson v. Manufacturers Hanover Trust Company,* 657 F.Supp. 448 (S.D.Tex.1987), *affirmed,* 845 F.2d 1020 (5th Cir.1988), presents the factual and procedural counterpoint to the instant proceeding.

In the *Thomasson* case, certain minority partners of a limited partnership which was involved in bankruptcy proceedings filed a *separate* district court action against certain banks and asserted RICO claims, securities fraud claims, common law fraud claims, breach of warranty and fiduciary duty claims, and claims for conversion, destruction of property and tortious interference with contractual relations. The banks filed a motion to dismiss, contending that all of the partners' claims were partnership, and not individual, claims and could only be asserted by the trustee or debtor in

---

**6.** Fed.R.Civ.P. 24(a)(1) allows intervention of right when a statute of the United States confers an unconditional right to intervene. Section 1109(b) of the Bankruptcy Code and its companion procedural rule, BR 2018(a), control intervention by a "party in interest" in the main chapter 11 case only. Although some have argued that § 1109(b) confers upon a "party in interest" an unconditional right to intervene in an adversary proceeding within the meaning of Fed.R.Civ.P. 24(a)(1), the Fifth Circuit has repudiated this view. *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283 (5th Cir. 1985).

possession of the partnership's estate. The district court held that to the extent the securities fraud, RICO, and common law fraud claims stated injury to the *partners* due to the alleged fraudulent inducement of the partners to enter the partnership and purchase the alleged securities, the partners could assert such claims as *individual* causes of action outside the confines of the bankruptcy court. 657 F.Supp. at 453 & n. 4.

The *Thomasson* court also held that where the claims of the limited partners asserted damage to a partner's share of his or her partnership interest or contribution, such claims were *partnership* claims, and could not be asserted by the limited partners individually. 657 F.Supp. at 453–54. Where the partnership was in bankruptcy, moreover, the *Thomasson* court held that such partnership claims were property of the estate and the limited partners were precluded from asserting such claims derivatively. *Id.* at 452 (citing *American National Bank of Austin v. MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983) (cause of action under "corporate trust fund" doctrine is right of corporation which, upon bankruptcy, passes to trustee)).[7]

Applying the *Thomasson* holding to the case at bar, the limited partners may assert counts I, II, III, V, and VI of their complaint, which state injury to the partners due to the alleged fraudulent inducement of the partners to enter the partnership and purchase the securities, as *individual* causes of action in a non-bankruptcy forum.

Thus, this court holds that with respect to counts I, II, III, V, and VI of the intervenors' complaint, the intervenors failed to comply with the third requirement of intervention of right. Because the intervenors could assert these individual claims for damages sustained by the sale of said partnership interests in a non-bankruptcy forum, the intervenors were *not* so situated that as a practical matter the disposition of the partnership action would impair or impede their ability to protect their individual claims.[8]

Permissive intervention under Fed.R. Civ.P. 24(b) should also be denied with respect to these individual claims because these claims have no question of law or fact in common with the partnership's claims against the defendants. Furthermore, resolution of these individual claims in this proceeding would add new issues to an already complex case and unduly delay the adjudication of the partnership action.[9]

■ Under the *Thomasson* standard, however, count IV of the intervenors' complaint, which seeks damages due to the diminution in value of the partners' contribution to the partnership, is a *partnership* claim which may only be asserted by the debtor in possession or trustee of the partnership's estate. Because the partnership, as debtor in possession, has already asserted this breach of contract claim against the defendants, the limited partners are precluded from intervening of right or by permission to assert a *separate* derivative claim for breach of contract.[10]

7. The *Thomasson* court relied upon the leading Fifth Circuit case of *Cates v. International Telephone and Telegraph Corp.*, 756 F.2d 1161 (5th Cir.1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) for the distinction between partnership and individual causes of action. Although the *Cates* and *Thomasson* decisions construed Texas partnership law, the *Cates* decision was recently cited with approval by the United States District Court for the Middle District of Alabama in the decision, *Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 660 (M.D.Ala.1988).

8. Compare *McClune v. Shamah*, 593 F.2d 482 (3rd Cir.1979) (partnership debtor precluded

from intervening in limited partners' separate RICO and securities fraud actions).

9. See *In re Lion Capital Group*, 48 B.R. 329 (S.D.N.Y.1985) (no withdrawal of reference and consolidation where limited partners' district court RICO and securities fraud actions involved different questions of law and fact from trustee's adversary proceedings).

10. *See Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180 (N.D.Tex.1986) (shareholders, who failed to comply with second requirement, precluded from intervention of right to assert derivative claim in debtor corporation's suit against third party.) *See also* Ala.Code § 10–9A–180 (1987) which permits a limited

The limited partners do, however, meet the four requirements of Rule 24(a)(2) to intervene of right with respect to the three claims asserted by the partnership against the defendants:

1) the limited partners' motion to intervene, which was filed soon after the partners received notice of the proposed compromise wherein the defendants would receive a portion of the net proceeds from the sale, was timely;

2) the limited partners, who may share in the net proceeds received by the partnership, clearly have an interest in the property which is the subject of the partnership's adversary proceeding;

3) the limited partners, who are precluded from asserting the partnership's claims against the defendants either individually or derivatively, would be bound by the partnership's disposition of its three claims against the defendants; and

4) the limited partners—who alleged that (a) the partnership and its promoters fraudulently induced the partners to invest in the partnership; (b) the partnership breached its fiduciary duty to its limited partners in mismanaging the complex and (c) the limited partners have not been adequately represented by the partnership during the bankruptcy proceedings—have demonstrated that their interests are represented inadequately by the existing parties to the suit.[11]

For the foregoing reasons, a separate order will be entered ratifying the order of this court permitting the limited partners to intervene of right in this adversary proceeding only with respect to counts I, II and III of the debtor/plaintiff's complaint, as amended, and granting the defendants' motion to dismiss the intervenors' complaint without prejudice to the intervenors'

partner to bring a derivative action on behalf of the limited partnership "if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed." Ala.Code § 10–9A–180 (1987).

11. Compare *In re Central Ice Cream Co.*, 62 B.R. 357 (N.D.Ill.1986) (where interests of shareholders with regard to approval of settlement of

assertion of their individual claims in a non-bankruptcy forum.

debtor's breach of contract suit adequately represented by debtor and trustee, and where shareholders never moved to intervene, no standing to appeal). The court notes that the limited partners have not moved for the appointment of a trustee in this case despite their allegations of fraud and inadequate representation.